IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JASON CAIRA,

Plaintiff,

v.

OPINION AND ORDER

25-cv-750-wmc

DAVID SCHROEDER (in his individual capacity), CAMBRIDGE COMMUNITY FIRE / EMS DISTRICT, and CAMBRIDGE COMMUNITY FIRE AND EMS COMMISSION,

Defendants.

Plaintiff Jason Caira challenges his termination as deputy EMS chief for the Cambridge Community Fire/EMS District and the Cambridge Community Fire and EMS Commission (together, the "District"). In particular, Caira claims he was terminated in retaliation for supporting a coworker's administrative complaint and for pursuing his own retaliation action, violating the Family and Medical Leave Act ("FMLA").[1] (Pl.'s Am. Compl. (dkt. #11).) In firing him, Caira also claims that the District violated his employment contract and that the District and the Commission's acting president Dave Schroeder violated his right to due process.

Defendants have moved to dismiss plaintiff's complaint in its entirety with prejudice. (Dkt. #21.) As explained below, although questions remain as to his eligibility for private relief under the FMLA, plaintiff adequately alleges an claim under that statute. Plaintiff also adequately alleges a procedural due process claim against Schroeder, but he

[1] Unless otherwise indicated, "FMLA" refers to the federal version codified at 29 U.S.C. §§ 2611–2620.

has not alleged facts connecting the denial of process to a municipal policy or custom.[2] Accordingly, the court will grant defendants' motion to dismiss in part but without prejudice and otherwise deny the motion.

## ALLEGATIONS OF FACTS[3]

On or about July 10, 2023, Jason Caira entered into a three-year employment contract with the District's Cambridge Community Fire/EMS to serve as deputy EMS chief. Both the Cambridge Community Fire and EMS Commission are municipal agencies organized under state law. The employment contract permitted Caira's termination only for cause and incorporated "process and standards" under Wis. Stat. § 62.13(5)(em), which also contains a "just cause" requirement for termination of police and fire department subordinates.

In October 2023, Caira further assumed the duties of acting EMS chief while Chief Paul Blount was on medical leave. Sometime after Caira served in that role for more than 30 days, Blount filed an administrative complaint alleging FMLA violations. Caira supported Blount by preventing disclosure of his private information and serving as a favorable witness in Blount's administrative proceeding. Subsequently, Caira received

[2] The court has supplemental jurisdiction over plaintiff's breach of contract claim. Defendants seek dismissal of that claim based on their position that plaintiff's federal claims must be dismissed, but do not make an independent challenge to the merits of the contract claim. Because federal claims remain as outlined below, the court retains supplemental jurisdiction over the contract claim.

[3] Unless otherwise noted, all facts are taken from plaintiff's amended complaint and accepted as true.

threats of termination, as well as accusations he describes as false, lost his authority to receive mail on his employer's behalf, and had his employer-issued, debit card canceled.

Caira filed a charge with the Wisconsin Equal Rights Division alleging retaliation for his support of Blount. In January 2025, Caira amended that charge to allege additional retaliation for supporting Blount and filing his own complaint. Caira was terminated on January 22, 2025. Caira received no advance notice of the charges against him, nor an opportunity to respond before his discharge, which he also attributes to his support of Blount's FMLA claim and his own retaliation claim. Caira further claims that Dave Schroeder, the Commission's acting president, intentionally withheld this required due process.

Finally, Caira claims he was denied compensation promised by his employment contract. Specifically, the contract provided for: a raise in summer 2024; payment at the chief's salary rate if he served as acting chief for more than 30 days; and payment for compensatory time and accrued vacation, holiday, and sick leave upon termination. Caira received neither the raise nor the additional acting-chief compensation, and he was not paid for his compensatory time or accrued leave after his discharge.

## OPINION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "'Detailed factual allegations'" are unnecessary, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" is required. *Id.* Simply providing "labels and

conclusions" or a "formulaic recitation of the elements" does not suffice. *Id.* The court must "accept as true all factual allegations in the amended complaint and draw all permissible inferences in [plaintiff's] favor." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

## I. The FMLA Claim

### A. Dismissal under Rule 12(b)(1)

Defendants move for dismissal under both Federal Rule of Civil Procedure 12(b)(6) and (b)(1). Rule 12(b)(1) requires dismissal for "lack of subject-matter jurisdiction." That difference matters since 12(b)(1), unlike 12(b)(6), allows a defendant to challenge the adequacy of the factual allegations supporting subject-matter jurisdiction and plaintiff bears the burden of establishing those facts if challenged. Here, defendants move under Rule 12(b)(1) on the grounds that plaintiff's FMLA eligibility is a jurisdictional requirement. However, Congress must "clearly state[] that a threshold limitation on a statute's scope [] count as jurisdictional." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006). Moreover, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.*

Unfortunately for defendants, none of the language they rely upon in the FMLA is jurisdictional in character. To the contrary, the Supreme Court has ruled similar language limiting coverage under Title VII to be nonjurisdictional. *See id.*; *see also Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 356 (5th Cir. 2006) ("In light of the Supreme Court's decision in Arbaugh, we conclude that the definition section of the FMLA,21 which defines 13 terms used in the statute, including the term "eligible employee," is a substantive

ingredient of a plaintiff's claim for relief, not a jurisdictional limitation"). Similarly, jurisdictional holdings of other circuits upon which defendants' rely are not only non-binding but have been abrogated. (Dkt. #21 at 6.) *Compare Nichols v. All Points Transp. Corp. of Mich., Inc.*, 364 F. Supp. 2d 621, 625 (E.D. Mich. March 18, 2005) (in turn citing *Douglas v. E.G. Baldwin Assocs., Inc.*, 150 F.3d 604, 605 (6th Cir. 1998)), *with Cobb v. Cont. Transp., Inc.*, 452 F.3d 543, 548 (6th Cir. 2006) ("[B]ecause intervening Supreme Court precedent has made clear that *Douglas* was incorrectly decided, we decline to follow *Douglas* and instead hold that the district court had subject-matter jurisdiction over Plaintiff's claims.").

Accordingly, defendants' FMLA eligibility challenge goes to the merits, not this court's jurisdiction. As a result, the court considers defendants' arguments regarding the sufficiency of the pleading as to plaintiff's eligibility for FMLA relief under Rule 12(b)(6) only and excludes defendants' affidavit concerning plaintiff's hours and the District's workforce, because those additional facts are not yet before the court.

**B. Dismissal under Rule 12(b)(6)**

Under Rule 12(b)(6), defendants seek dismissal of plaintiff's FMLA claim on two grounds. First, they argue plaintiff must allege that either Blount or he qualifies as an "eligible employee" under the FMLA. Second, if the plaintiff has filed an action outside of federal court already, defendants contend that the FMLA requires a plaintiff to exhaust administrative remedies before coming to federal court. Plaintiff in turn responds that: (1) no FMLA eligibility is required for a FMLA retaliation claim under that statute; and

(2) there are no exhaustion requirements before a FMLA action can proceed in federal court.

To begin, plaintiff is correct that § 2615's retaliation protections are not limited to "eligible employees," although other barriers may bar his right to seek private relief if he is not an "eligible employee." As to defendants' purported administrative exhaustion requirement, they are simply mistaken: no exhaustion requirement exists under either the FMLA or its regulations. Instead, the FMLA protects employees' medical or family leave through two mechanisms. First, §§ 2612–14 entitle certain "eligible employees" to various substantive and procedural rights to leave for medical or family reasons. *E.g.*, 29 U.S.C. § 2612(a)(1) ("an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" due to their child's birth, their adoption or fostering of a child, to care for an immediate family member during a serious illness, among other reasons). Second, the FMLA also prohibits actions adverse to those rights. 29 U.S.C. § 2615. Third, and finally, § 2617 authorizes "any eligible employee affected" to bring suit seeking damages or equitable relief under § 2617(a)(1) if the employer violated § 2615, and empowers "any one or more employees" to bring an action seeking such relief "in any Federal or State court of competent jurisdiction," "for and in behalf of" either themselves or themselves "and other employees similarly situated." § 2617(a)(2).

Employer actions prohibited by § 2615 fall into one of two groups. First, § 2615(a)(1) prohibits "any employer [from] interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). These claims are often referred to as "FMLA entitlement claims." Second,

§ 2615(a)(2) and (b) prohibit "discharg[ing] or in any other manner discriminat[ing] against any individual" in situations involving (a) discrimination by "any employer … for [the individual's] opposing any practice made unlawful by [the FMLA]," § 2615(a)(2); and (b) "any person … because [the] individual has" initiated "any proceeding, under or related to [the FMLA]," or because they provided, or were about to provide, "any information in connection with" or testimony in "any inquiry or proceeding relating to any right provided under [the FMLA]." 29 U.S.C. § 2615(b)(1)–(3). These latter claims are often referred to as "FMLA retaliation claims." The Seventh Circuit outlines FMLA retaliation claims as requiring three elements: "(1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018) (citation omitted).

Defendants argue that a necessary element of plaintiff's FMLA claim is proof of eligibility, including satisfying its hours-worked and employee-count requirements, and plaintiff's failure or inability to do so requires dismissal. Plaintiff responds that defendants conflate the different, available FMLA claims, noting defendants' cited authorities only concern entitlement claims, not retaliation claims. Further, plaintiff points out that case law, statutory text, and administrative regulations for FMLA retaliation claims all employ language extending standing to *any* individuals, not just employees, much less "eligible employees." (*See* Pl. Opp. (dkt. 23) at 8 (citing *Freelain*, 888 F.3d at 901; § 2615(a)(2) & (b) (referring to "discriminat[ion] against *any individual*," not "against any employee" (emphasis added)); 29 C.F.R. § 825.220(e) ("Individuals, and not merely employees, are

protected from retaliation for opposing (e.g., filing a complaint about) any practice which is unlawful under the Act.")).) Finally, plaintiff notes that the "employee number" requirement is specifically excepted for public agencies like the District.

Thus, plaintiff has plausibly alleged conduct prohibited by § 2615. Specifically, plaintiff alleges that he supported eligible employee Blount's FMLA complaint, served as a favorable witness, and complained of ensuing retaliation, after which defendants allegedly subjected him to escalating adverse treatment culminating in his termination. Taken together and construed in his favor, those allegations plausibly describe retaliatory conduct. Defendants' insistence that plaintiff must himself have requested or been personally denied FMLA leave ignores the express protection for opposition to unlawful practices or participation in related proceedings under § 2615(a)(2) and (b). *E.g., Freelain*, 888 F.3d at 901 ("The category of actions prohibited by the [FMLA's] anti-retaliation provisions is broader than the category of adverse employment actions prohibited by the [] anti-[entitlement] provisions. This difference makes sense because the provisions banning retaliation create a zone of protection around the fundamental anti-discrimination principle so that employers do not chill worker conduct seeking to vindicate that principle.") (citing *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008) (distinguishing the prohibited act under § 2615(a)(1) from the two prohibited acts under § 2615(a)(2)–(b) (citing *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 64 (2006))); *Burlington Northern*, 548 U.S. at 63)).[4]

[4] In fairness, the broadly worded prohibitions under § 2615(a)(2) and (b) are not what establish plaintiff's right to recover. Some of the language in § 2617 does suggest that an FMLA plaintiff must be an "eligible employee" to recover. *See* § 2617(a)(1) (using "eligible employee" to describe

Defendants' emphasis on Blount's pursuit of a *Wisconsin* FMLA remedies similarly fails. While defendants are correct that the U.S. Department of Labor does not enforce state family or medical leave laws, 29 C.F.R. § 825.701(a), a state-law label employed by one employee does not foreclose another employee's FMLA lawsuit for supporting the first employee's state claim to benefits. Rather, as the implementing FMLA regulations explain, opposition to a practice plaintiff "reasonably believe[d]" violated the FMLA is protected from retaliation. 29 C.F.R. § 825.220(e). Accordingly, an employee's support of another's claim in a state FMLA proceeding that allegedly results in retaliation may constitute conduct implicating both state and federal statutes. *See* 29 C.F.R. § 825.701(a) ("Employees are not required to designate whether the leave they are taking is FMLA leave or leave under State law, and an employer must comply with the appropriate (applicable) provisions of both."). Construing the allegations as asserting opposition to perceived FMLA violations, therefore, the court declines to dismiss merely because Blout's administrative proceeding invoked Wisconsin family and medical leave protections.

Finally, plaintiff's pending state FMLA proceeding creates no exhaustion or election-of-remedies bar to this federal claim as defendants now contend. Nothing in the FMLA requires administrative exhaustion for suits under the FMLA by private citizens. *See*

---

the liability); *but see* § 2617(a)(2) (using "employee" to describe who can bring a cause of action). Indeed, some courts outside the Seventh Circuit have so concluded. *See West v. Wayne Cnty.*, 672 F. App'x 535, 538–39 (6th Cir. 2016). However, the court need not resolve this unsettled issue to allow plaintiff's FMLA claim to proceed for two reasons. First, defendants never raised this potential argument under § 2617 in arguing that plaintiff must be an "eligible employee"; instead, relying on inapplicable case law for an FMLA entitlement claim. Second, there is incongruity between the language in § 2617(a)(1) and § 2617(a)(2) that makes the issue at least require further briefing at a later stage in this case.

*Edwards v. Heatcraft, Inc.*, 2006 WL 3159945, at *4 (M.D. Ga. Nov. 2, 2006) ("Unlike Title VII and the ADA, there are no administrative prerequisites that must be satisfied before filing an FMLA suit in federal court"); *Ogborn v. United Food and Commercial Workers Union*, 2000 WL 1409855, at *8 (N.D. Ill. Sept. 25, 2000) ("[T]he FMLA does not itself require exhaustion of any remedies, let alone exhaustion before the EEOC."). Further, the limitation in § 2617(a)(4) only concerns specified enforcement suits filed by the Secretary. Similarly, defendants' reliance on 29 C.F.R. § 825.400(a)'s description of administrative and judicial enforcement alternatives also fails, since that provision addresses complaints to the Secretary of Labor and does not render the filing of a state administrative action a relinquishment of otherwise available federal relief.[5]

## II. Plaintiff's Due Process Claim

Defendants also seek dismissal with prejudice of plaintiff's procedural due process claim on the grounds that plaintiff: (1) fails to state a claim arising above a mere state-law contract dispute; and (2) cannot establish a sufficient federal constitutional violation tied to his claims against defendants Schroeder or the District to invoke § 1983. Plaintiff

[5] Defendants acknowledge in their reply that the FMLA imposes no administrative exhaustion requirement but contend that the court should refrain from resolving this case in light of plaintiff's earlier administrative filing, advancing something resembling an abstention theory. (Dkt. #24 at 3–4 ("Now that the administrative process has been initiated by the Plaintiff, he cannot now see to have the same factual and legal issues adjudicated by this Court. To allow plaintiff to proceed in both the administrative tribunal as well as this Court, the Plaintiff has set up the possibility for two completely different findings of fact and law."). The court also notes that neither of defendants' briefs identifies an applicable abstention doctrine nor develops its requirements, and the court declines to construct an additional abstention argument for defendants. However, given the deference this court may owe to state proceedings, defendants may submit a supplementary filing outlining the status of plaintiff's state administrative action that may warrant staying this action.

opposes dismissal on this ground. While the court concurs with plaintiff that he adequately pleads an underlying constitutional violation under the federal Due Process Clause and Schroeder's personal involvement in interfering with those rights, plaintiff fails to allege facts sufficient to state a separate due process claim against the District under *Monell*.

A procedural due process claim in this context requires: (1) "deprivation by state action of a protected interest in [] property;" and (2) "inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citation omitted).[6] For the first element, a protected property interest in the employment context arises where the plaintiff "ha[d] a 'legitimate claim of entitlement'" to his "'continued employment'." *Cole v. Milwaukee Area Technical College Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). Public employees have a sufficient "legitimate entitlement" provided their "employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met." *Colburn v. Trustees of Indiana Univ.*, 973 F.2d 581, 589 (7th Cir.1992).

Here, plaintiff alleges that his three-year employment contract permitting discharge only for cause, thus sufficiently limited defendants' discretion to discharge him before the three years had run. For purposes of a motion to dismiss, therefore, plaintiff has sufficiently pleaded the first element. *See Dibble v. Quinn*, 793 F.3d 803, 808 (7th Cir.

[6] Defendants reference a requirement that plaintiff show "defendants violated some other constitutional right or that state remedies were inadequate." However, they rely on the Seventh Circuit opinion in, *Campos v. Cook Cnty.*, 932 F.3d 972 (7th Cir. 2019), for this assertion. While *Campos* involved a former employee alleging his termination violated due process, the employee "[o]ddly [] d[id] not bring a procedural due process claim, focusing instead on substantive due process," to which the court was forced to "limit [its] analysis." *Id.*, at 975. Accordingly, the holdings defendants rely upon from that and related cases are inapplicable here. Instead, the court must consider plaintiff's claims under the framework they asserted, which is for a violation of his *procedural* due process rights.

2015) (holding that a public employee's "discharge[] without cause before their six-year terms expired" in violation of their contracts warranted "notice and individual opportunity to be heard" to deprive their protected property interest in their employment). Defendants' failure to provide any contrary authority only reinforces this conclusion.

Plaintiff also sufficiently pleads the second element -- inadequate state process. As the Supreme Court has explained, unless employed "at-will," a "public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before "termination." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).[7] Plaintiff alleges he was afforded neither notice nor opportunity to be heard, although it is unclear whether he was offered any explanation. While there is some theoretical relief available to him in state court, therefore, the possibility of eventually obtaining damages or equitable relief through a contract action does not, by itself, establish the adequacy of the process afforded here.[8]

---

[7] While Defendants expend considerable ink arguing that Wis. Stat. § 62.13(5)(em) provides no right to notice or a hearing, that rebuttal is misplaced since their qualm is with the Fourteenth Amendment's Due Process Clause and the Supreme Court that recognized rights under it. The only role Wis. Stat. § 62.13(5)(em) plays is to limit the District's discretion to create a legal entitlement to which procedural due process applies. Accordingly, the parties' disagreement about what procedures are incorporated into the employment contract is immaterial to plaintiff's due process claim.

[8] Defendants also seek dismissal of plaintiffs' procedural process claims on grounds echoing their grounds for dismissal of the FMLA claim above. In particular, defendants contend that because plaintiff has a pending breach of contract action in Wisconsin state court for damages and injunctive relief, and Wisconsin law allows both, he cannot show state relief is inadequate for his due process claims. However, as plaintiff notes, the second element for a procedural due process clause claim - inadequate state process - is a much lower bar to meet than other analyses focused on querying adequacy of available state courts relief. *See Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 692 (7th Cir. 2004) ("[R]emedies appropriate… are characterized by promptness and by the ability to restore the claimant to possession. The underlying concept seems to be that the remedy is available before the loss has become complete and irrevocable. A state law

As to the sufficiency of plaintiff's pleading tying his procedural due process clause claim to defendants, plaintiff has sufficiently identified individual defendant Schroeder's personal involvement. In particular, individual liability under § 1983 requires that the defendant have "'caused or participated in a constitutional deprivation'." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citation omitted). Here, plaintiff alleges that Schroeder, as acting Commission president, had authority to provide the required process and intentionally withheld it. Combined with alleged missing notice and opportunity for a response, those allegations attribute plaintiff's denial of due process to Schroeder personally. Further, defendants' position that plaintiff must also allege Schroeder's ultimate hiring or firing authority does not follow from the actual alleged violation, since plaintiff not only challenges his termination by the District, but both defendants denial of the procedures that were due preceding it. Accordingly, plaintiff has sufficiently alleged Schroeder's personal responsibility for withholding required due process.

Still, the claim against the District does require additional allegations. While municipalities are "'persons'" that can be liable under § 1983 for damages, they "cannot be held liable *solely* [for] employ[ing] a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, § 1983 liability extends to municipalities only "when execution of a [municipal] policy or custom, whether made by its lawmakers

---

breach of contract action is not an adequate post-termination remedy for a terminated employee … who has been afforded only a limited pre-termination hearing…. [A] lawsuit does not satisfy the requirement of promptness, which is essential if the employee is to pursue time-sensitive remedies such as reinstatement. (citations omitted)).

or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The Seventh Circuit "recognize[s] three types of municipal action that can support municipal liability under § 1983: '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority'." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022) (citation omitted).

Plaintiff's amended complaint does not sufficiently allege any of those grounds. He identifies no policy directing termination without process and no facts suggesting a settled practice of withholding it. Nor does Schroeder's alleged authority to provide process establish authority to make final policy governing that process, since "[n]ot every municipal official with discretion is a final policymaker," with the question instead "often turn[ing] on whether [their] decisions are subject to review by a higher official or other authority." *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011). The complaint otherwise supplies no facts connecting the denial of process to a decision by a final policymaker. Although plaintiff has sufficiently alleged the underlying violation, he does not supply that missing basis for holding the District responsible.

## ORDER

IT IS ORDERED that defendants' motion to dismiss (dkt. #21) is: (1) DENIED IN PART as to plaintiff's FMLA claim, breach of contract claim, and procedural due process claim against defendant Schroeder and GRANTED IN PART as to plaintiff's

procedural due process claim against defendant District without prejudice to seeking amendment consistent with this Opinion and Order.

Entered this 4th day of November, 2026.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge